Neiman. Are you with us? Yes, I am. Mr Duffy. Yes, I am. Case number 20-2678 United States versus just Jasmine Shelly. All right, Mr Neiman. Thank you, Your Honor. May it please the court counsel. My name is Nate Neiman, and I represent the defendant Jasmine Sheely in this case. The issue here involves a forfeiture issue that was in connection with a hearing that took place after Miss Sheely's guilty plea in a drug conspiracy case. The government, I wanted to first start out by addressing the government's 28-J letter. I do, after reviewing the government's 28-J letter, I do agree that the parties used the wrong standard, the pre-2000 standard, with respect to the government's burden of proof. But it doesn't change the outcome of this case, and it doesn't change the outcome of this argument. Under the law, the government was obligated to prove by preponderance the evidence that the money seized in this case was connected to drug trafficking. And we stipulated that they did that, and that that shifted the burden to Miss Sheely to prove that the proceeds were not. And our argument at the district court and on appeal is that Miss Sheely did, in fact, prove that the proceeds were not hers. Or I'm sorry, that the proceeds were not connected to drug trafficking. It is more probable that the proceeds, or that, I'm sorry, that the cash that was recovered from Miss Sheely's homes were not proceeds from drug trafficking. And that's because she provided evidence at the hearing that the proceeds came from a settlement that she received in connection with a personal injury case in May 13th of 2019. On that date, she obtained a settlement for about $31,000. That was paid out through two payments on May 24th of 2019 and June 24th in the amounts of $3,700 and $28,000, respectively. And she withdrew this money from her bank account from June 24th to August 7th, which does have some overlap in the conspiracy here, which is August 1st of 2019 to September 11th, 2019. Now, the government's intention here, as it was below, is basically that because of the controlled buy money from the last controlled payment being in the lockbox among the other cash, that makes it forfeitable. But the last payment was made the day before the search warrant was executed. So it was made on September 9th for $525, and the search warrant was executed on September 11th. That's when they found the guns, the drugs, the scales, and $13,900 in cash. But only $500 in the lockbox was the controlled buy money. And the rest, the government was unable to determine the provenance of those funds. So the question in the forfeiture hearing was whether the funds in the lockbox minus the $500 that was identified as the controlled delivery of funds that was made the day before, whether that is forfeitable. And the government has argued here that the fact that the $500 was commingled with the rest of the funds makes the entire funds forfeitable. But our position is that the Eighth Circuit has rejected that commingling results in forfeiture. And legitimate funds are subject to forfeiture only if those funds are knowingly commingled with forfeitable funds. So we would concede as a factual matter that the buy money was found in the box with the other cash. But interestingly, there were a number of controlled buys that occurred leading up to this controlled payment. And none of the money that was used in those controlled buys, which was all marked, was found with the rest of the cash. It was only the money. Judge Kobus here, I may be misunderstanding your argument, but it's undisputed, correct, that $500 was commingled from the buy? That's correct, Your Honor. So is your specific argument that your client did not knowingly commingle it, or simply that she did not commingle more of it, more of the control? It would be... Go ahead. Your Honor, I'm sorry. It would be that she did not the purpose of this is that the purpose of this forfeiture provision is so that you know, if funds are willingly put together with legitimate funds, then the whole thing kind of becomes subject to forfeiture. But in this case... So I'm still missing something here, but the argument then is that she did not knowingly commingle that $500, that it was accidental, or someone else mingled it. It seems to me that if there's $500 that's commingled under your concessions, you have a problem. But again, I may be misunderstanding your argument, so I wanted to give you a chance to clear me up on that. Well, the government hasn't presented any evidence that Ms. Sheely knowingly put that money in the box with the other funds. But it was found... I mean it... Commingled, and it was found in her box, right? I mean, and I think the burden is on you at this stage by preponderance. That's correct. There were other items in the same bedroom that were not attributable to Ms. Sheely, such as the firearms. Wait a minute. The definition of knowingly is simply that one does not act through ignorance, mistake, or accident. And are you saying that this money accidentally got put in the lockbox, or mistakenly got put in the lockbox? And if so, what evidence do you have? I mean, knowingly is a really, really low standard if you look at it. I mean, I've instructed a million juries on knowingly. And I mean, if you did the act, you don't need to have knowledge of its criminality. You don't have to acknowledge that by putting it together that you commingled it such that it's forfeitable. You just got to know you're putting the money in the same box, right? Yes. So don't you have to show that somebody else put the money in the box? Or that, you know, to carry the preponderance of the evidence, let's just show that she didn't do it, or somebody else did it, or some other explanation as to how the money got in the box? Well, I'm not claiming that the money in the box was accidentally put there. But I think that with respect to my particular argument here, is that that's just where she keeps her money. So if she received the buy money, it's not like she is putting it in there to sort of convert the rest of her funds. But our law doesn't require that you intentionally commingle the funds. It says that you knowingly do it. And knowingly means like absence of mistake, ignorance, or accident, right? That would be the laws as it is defined. Yes. And I see that I am out of time. So I would reserve the rest for rebuttal. All right. Thank you, counsel. Mr. Duffy. May it please the court. Michael Duffy on behalf of the United States. Going back to the questions that the court had about the knowingly commingled, the government's position is certainly that the $500 of the buy money was knowingly commingled. What we have in $525 from an undercover agent a day or two before the search warrant is executed at her residence. And that money, which is marked, is then found on September 11th in the lockbox in a bedroom. And the money in the lockbox is separated into a purse. And then there's loose money in the locker, of course. And so the $500 that's found in the purse, that's the buy money. There's only really one likely explanation. And that is that Ms. Shealy took that money from the undercover officer. And as my friend, Mr. Newman pointed out, this is her money that she admits is hers in the lockbox. And she put it in the purse. And counsel, would you address what is the key question here? And that's the knowingly commingled. And my question to you specifically is, have we ever explicitly adopted that standard? I know it comes up in the 7725 Unity Avenue case, but it's not clear to me that we actually adopted that standard in that case. What are your views on that? Thank you, Your Honor. Our view would be this. The reason why we presented the argument is the Ms. Shealy's concession with regard to that. If the court were to look more closely at it, if the court, for example, were to not accept that concession for some reason, then the government would submit that that would be one factor for the court to consider among all of the others, such as the court has indicated in previous cases with regard to other drugs and guns and baggies and digital scales and things like that being present with funds. The commingling would be another factor for this court to consider, should the court not decide it based on Ms. Shealy's concession. But the government submits that with it being her money and the money being commingled there, it certainly meets that standard as to whether it's knowingly commingled. Certainly, there's evidence in the record for the court to make that conclusion. Is there an argument that could be advanced that it wasn't actually commingled as the $525 was in the purse and even though it's all in the same lockbox that separates it? That's the thing, Your Honor, is that we don't have any evidence of the record that would distinguish the money in the lockbox other than what you can view it as, which is a purse containing about $8,000 and a lockbox that the purse is in containing about $5,000. There's no that would provide any insight into the keeping of those funds. And going back to our 28J letter that my friend Mr. Neiman started out with, we would agree that it does not change the party's positions in the case. It does not change the issue here before the court. We would also point out that the district court, based on the forfeiture transcript, did apply the correct standard of preponderance of the evidence and that with the concessions that the defense that Shealy has made with regard to the presumptions and the burden shifting, the government would submit that the case is still that the district court should be affirmed for the same reasons. Going back to what the district court found, the district court found that there was a large sum of cash that was seized during the drug drug conspiracy timeline. It was seized in close proximity to drug items such as methamphetamine. There were three guns, including two of those guns, were found in the room with the money in this case, digital scales, and this is over the same period of the controlled buys. And I think the timeline is important to note here in this case because what you have is the the conspiracy charge in the indictment starts on August 1st and goes to September 11th when the search warrant is executed. But also if you look at Special Agent Allers' testimony in the district court, he explains that the co-conspirator Christoph talked about in the previous two months leading up to when he makes his statement after the execution of the search warrant that over that two-month time period, he said that they went to Burlington to the source five to seven times to purchase one pound to one half pounds of methamphetamine on each trip with a range of $3,500 to $5,000 for each pound. So and if you look at the withdrawals, what you have is between July 8th and August 7th, you have this $27,000 withdrawn. And so based on what Mr. Christoph told the officers and based on what the bank records show, there's a substantial overlap between the thousands of dollars withdrawn and the thousands of dollars that would have been spent to purchase this, as the district court said, an enormous amount of methamphetamine in this same period of time. I would also point out that the government argued both facilitation and proceeds to the district court below. So from the government standpoint in this case, the court could affirm on either one or both of those grounds. Certainly for the drug proceeds, the government would submit that it would be likely from our perspective that the settlement funds were simply used as basically the seed money to invest in the inventory of this drug distribution business, given the time that's overlapped. And the reason why when you get toward the end of the conspiracy, you don't see anything but $500 left of the buy money. You don't see the 6,000 or so remaining is that that's how quickly she was replenishing her supplies and going through these pounds and pounds of methamphetamine. So from our perspective, the government would submit that all of the money in the lockbox would be drug proceeds based on looking at those facts. Certainly if to the extent that the defense that Sheely argues that she rebutted that presumption and carried her burden in this case, the government would point out that when you look at the timeline again and when you look at the situation that the officers encountered the residents that day, this is a pound level dealer that only had 14 grams of meth on her in the entire house. And yet, and she had this $13,000 in cash. As Special Agent Allers testified below, it's highly likely that she was getting ready to re-up or reinvest that money into her inventory. So that would also fall under a facilitation theory. So for those reasons, the government would submit that this court could affirm on either one of those either one of those grounds to find that the money was drug proceeds under either of those theories. And unless the court has any further questions, the government would submit with those comments. Thank you. Thank you, counsel. Mr. Neiman. Your mic is muted. I have 26 seconds left, so I would use that to answer any questions from the court if the court has any. With no further questions, I would ask that the Court of Appeals reverse the Thank you. Thank you very much, counsel. And Mr. Neiman, please accept the thanks of the court for your service as appointed counsel in this case. Thank you, Your Honor. Meanwhile, the case is submitted and court will render a decision in due course.